## Iron Trade Products Company v. C. E. Watson Coal Company.

*Sales—Executory contract—Statement—Affidavit of defence—Agreement to ship specified quantities of goods daily.*

1. In an action by vendors to recover the price of coal which, by the agreement of sale, was to have been shipped at the rate of five cars daily, although there was nothing in the agreement making the rate of shipment of the essence of the contract, an averment in the affidavit of defence that the cars were not shipped at the rate of five cars daily is insufficient unless accompanied by a further averment that the vendee refused to accept the coal when delivered because the shipments had not been made at that rate.

*Sales—Executory contract—Inspection by consignee who was not vendee.*

2. In the absence of a clause in the agreement of sale authorizing inspection by the consignee, the vendee cannot compel the vendor to assume liability for inspection by a consignee not a party to the contract; and, hence, in an action to recover the price of coal shipped and rejected for defects in quality, an affidavit of defence is insufficient which fails to disclose where or by whom inspection was made of the rejected coal, or the date when notice of inspection was given to the plaintiff, or that plaintiff agreed to accept the results of an inspection by the consignee or by any one representing the consignee.

*Sales—Executory agreement—Acceptance of part of the order and rejection of part.*

3. In the absence of a clause in the agreement of sale permitting the vendee to accept part of the order and reject part, he must either accept the whole of the order or reject the whole.

*Sales—Executory agreement—Rescission.*

4. After the vendee has accepted part of the shipment, it is too late to rescind the contract.

*Sales — Executory agreement — Counter-claim for alleged profits which might have been made.*

5. Where, in an action to recover the price of coal sold defendant by plaintiff, defendant alleges a breach by plaintiff and sets up a counter-claim for the profits which he might have made had plaintiff shipped coal of the quality required by the contract, the counter-claim must contain an averment of the difference between the value of the coal at the time and place of delivery and its value if it had been of the quality warranted, or such circumstances as show that the damages are of a special character.

Rule for judgment for want of a sufficient affidavit of defence, and statutory demurrer to set-off and counter-claim. C. P. No. 5, Phila. Co., Sept. T., 1923, No. 62.

*Samuel Erwin,* for plaintiff; *E. B. Breeding,* for defendant.

Iron Trade Products Company *v.* C. E. Watson Coal Company.

MARTIN, P. J., Aug. 1, 1924.—Plaintiff filed a statement of claim in a suit to recover the price of coal purchased by defendant. The statement avers a contract on April 19, 1923, for forty-nine cars of coal, f. o. b. mine, at the price of $1.70 per ton, to be shipped to the Chevrolet Motor Car Company at Flint, Michigan. A copy of "sales contract," attached to the statement of claim, describes the material as "Slack Coal, Pittsburgh Seam, clean, not exceeding 10 per cent. Ash, not over 2 per cent. Sulphur, with a BTU of 13900," and the rate of shipment, five cars daily. Terms: Net, 15th of the month for previous month's shipments. This sales contract was marked "accepted" by defendant "5-18-23." It is averred that between April 19th and May 18, 1923, plaintiff shipped forty-four carloads of coal, as indicated on a schedule attached to the statement of claim, and that plaintiff became entitled to the price of this coal, amounting to $4277.965.

The affidavit of defence admits that this coal was shipped, but denies that shipments were made in accordance with the terms and conditions of the contract, and avers that cars were not shipped at the rate of five daily, as appears by the schedule of shipments attached to the statement of claim, and that the coal was not of the quality specified, as appears from a copy of a detailed analysis of the contents of cars rejected by the consignee, the Chevrolet Motor Car Company, attached to the affidavit of defence.

It is also averred in the statement that an oral contract was entered into by plaintiff and defendant on May 17, 1923, for the sale by plaintiff to defendant of 100 cars of coal at $1.70 per ton, f. o. b. mine, to be shipped to the Chevrolet Motor Car Company at Flint, Michigan, and paid for on the 15th of the month for previous month's shipments; and that between May 18th and May 28th twenty-five cars were shipped by plaintiff under the terms of that agreement; but that on May 31, 1923, defendant wrote plaintiff: "We regret to advise that the Chevrolet Motor Car Company has refused to accept any more coal from us due to the quality of the coal shipped them on our order. Under the circumstances we must ask that this contract be canceled."

The affidavit of defence avers that, in an oral conversation relating to this contract for 100 cars, the president of the defendant company stated to plaintiff's agent that if all the coal shipped, or to be shipped, to the Chevrolet Motor Car Company, under the contract of April 19th, was satisfactory to that company and accepted by them, defendant would then give plaintiff an order for 100 cars under the same terms and conditions as to quality and rate of shipment provided in the agreement of April 19th, but that the conditions of this offer were not fulfilled, in that not all the coal shipped to the motor company, under the agreement of April 19th, was satisfactory, nor was it accepted by the motor company; that some of the coal was rejected because the quality was not as specified in the agreement, of which rejection plaintiff was notified; and that the motor company had further cause for rejection, in that cars were not shipped at the rate of five daily. That there was an agreement entered into between plaintiff and defendant on May 17, 1923, or shipments accepted under that alleged contract is denied, and any shipments made by plaintiff under such an agreement, it is averred, were made without authority of defendant.

The statement claims that on June 8th Harkness, an agent of the defendant, requested plaintiff to ship ten more cars under the agreement of May 17th, and that these cars were shipped to the motor car company on June 8th. A copy of the schedule of the shipments is attached to the state-

ment of claim, showing the amount due to be $3271.055. The affidavit of defence denies that Harkness had authority to bind defendant, or that he ordered the ten cars of coal to be shipped; admits that ten cars of coal were shipped by plaintiff to the motor car company on June 8th, but denies that the shipment was by agreement with defendant or its duly authorized agent; avers that defendant did not receive or accept any cars under that alleged contract; and, admitting that the shipments were made as indicated in the schedule attached to the statement of claim, denies that there was a contract entered into on May 18, 1923. The statement avers that on arrival of the forty-four cars shipped under the agreement of April 19th, and the thirty-five cars shipped under agreement of May 17th, and tender thereof by the carrier to the consignee, the motor company refused to receive some of the cars, but accepted delivery of others. The car initial numbers and contents of those accepted and those refused are specified in two schedules attached to the statement of claim, showing that coal of the value of $4913.255 was refused, and coal valued at $2635.765 was accepted. The affidavit admits the accuracy of these schedules of accepted and rejected coal, and avers that fourteen of the cars marked accepted were diverted while in transit to the Peerless-Portland Cement Co., of Union City, Michigan, at the request of plaintiff, and, when they reached the destination, were rejected by the cement company, due to inferior quality, and that it was necessary to make an allowance of 75 cents per ton, at which lower price the cement company accepted the coal, that this allowance, amounting to $584.29, leaving a balance due plaintiff by defendant $741.09.

The affidavit admits liability to plaintiff for 771.4 tons, at the price of $1311.38, shipped under contract of April 19th, and claims credit for $338.73, which plaintiff admits to be correct.

The statement of claim avers a sale by plaintiff to the Chevrolet Motor Car Company of the ten cars shipped on June 8th, for which plaintiff received from the Chevrolet Motor Car Company $527.30, at the price of $1 a ton. A credit slip for this amount was sent to defendant, accompanied by notice that all extra charges would be charged to its account.

The affidavit avers that these ten cars were sold to the motor company for $1.10 per ton, and denies liability to the plaintiff. The statement avers that $231 was paid by plaintiff for demurrage on these ten cars, which the railroad company required as a condition for delivery to the consignee, and that an invoice of this payment was mailed defendant. The affidavit of defence acknowledges the receipt of the credit memorandum, but denies knowledge of the terms or conditions of the sale.

The statement claims to recover from defendant the charges of the carrier for transportation, freight, demurrage, storage, unloading and expenses of sale of the coal in the cars rejected by the motor company, but this claim is not pressed in the present motion; payment has not been made by plaintiff, and suit has not been instituted by the carrier against plaintiff.

It is alleged in the statement of claim that on May 29, 1923, defendant bought from plaintiff a car of coke, at the price of $7.25 per net ton, f. o. b. ovens, to be shipped to Consumers' Coal and Coke Company, Kalamazoo, Michigan, that the coke was shipped, received and used by the consignee. Liability for $277.31, by reason of this sale, is admitted in the affidavit of defence.

Defendant filed a set-off and counter-claim for profits, which it is alleged could have been realized from the thirty cars rejected by the motor company,

shipped by plaintiff under the contract of April 19th, for forty-nine cars, and from the five cars that were not shipped upon that order, and for profits on the 100 cars, which it is claimed would have been ordered from defendant by the Eclipse Coal Company if the coal shipped under the contract of April 19th had been accepted by the Chevrolet Motor Car Company.

A reply in lieu of a demurrer was filed by plaintiff, assigning as cause for demurrer that defendant did not aver that any of the cars had been rejected by defendant; that the five cars were not shipped because, as appears in the pleading, defendant requested plaintiff not to ship them; that there was no notice to plaintiff, prior to the execution of the contract, that defendant required that the coal shipped must be of a kind and quality to comply with defendant's obligations under a contract with the Eclipse Coal Company; because the value at the time and place of delivery of the coal in the thirty carloads rejected, and its value if the coal had not been defective in quality, is not stated; and the counter-claim fails to state the market price at the time and place of delivery of five carloads of coal of the kind and quality of that which was not delivered.

It is alleged in the affidavit of defence that exhibit "A," attached to the statement of plaintiff's claim, does not include all the terms and conditions of the contract of April 19th, and there is annexed to the affidavit of defence exhibit "A-2," containing a variation of the terms of the contract set out in the statement as to the "material."

The contract alleged by plaintiff describes the "material" as slack coal, Pittsburgh Seam, not exceeding 10 per cent. ash, not over 2 per cent. sulphur, with a BTU of 13900. In "A-2," attached to the affidavit of defence, there appears under the title: "Coal, Pgh. Seam, good clean, well prepared, free from crop, slate and bone, not exceeding 10 per cent. Ash, not over 2 per cent. Sulphur, with a BTU of 13900."

The pleadings fail to indicate what relation, if any, this exhibit of the affidavit has to the sales contract of the statement, and whether or not it was merged in the contract. Both papers bear date April 19, 1923. The "sales contract," as stated by plaintiff, contains a condition that "this order cannot be changed or canceled, except by mutual consent in writing." The "purchase order," attached to the affidavit of defence, contains a provision: "If at any time coal or coke is not satisfactory to our customer, further shipments may be canceled." In both papers the price is fixed at $1.70 per net ton, f. o. b. at the mine. There is no averment that the "purchase order" was accepted by plaintiff, but the "sales contract" shows on its face that it was accepted by the defendant.

It is admitted that forty-four cars of coal were shipped by plaintiff under the contract of April 19th. There is no averment in the affidavit of rejection of any coal because shipments were not made at the rate of five cars daily, and this provision was not made the essence of the contract. The affidavit of defence avers that the coal was rejected because of defective quality, and the averment with reference to delay is "that the Chevrolet Motor Car Company had further cause for rejection, in that cars were not shipped at the rate of five cars daily."

The affidavit is insufficient in so far as delays in shipment are presented as a defence.

It is not averred that any of the coal was sold subject to inspection by any one other than defendant, and there is no allegation that inspection was made by defendant at the mine or any other place. In the absence of an agreement

to that effect, defendant cannot compel plaintiff to assume liability for inspection by a consignee not a party to the contract, nor do the terms of the contract permit defendant to accept part of the order and reject part.

The affidavit of defence fails to disclose where, or by whom, inspection was made of the rejected coal, or the date when notice of rejection was given to plaintiff, or that plaintiff agreed to accept the results of an inspection by the consignee or any one representing the consignee.

After defendant accepted a portion of a shipment, it was too late to assert a rescission. .

In Elzea *v.* Brown, 59 Pa. Superior Ct. 403-408, where there was a contract for the purchase of eggs, it was said: "In order to assert a rescission of the contract, he is required to place the goods at the disposal of the plaintiff, absolutely and without qualification. He could not rescind the contract and at the same time assert dominion over the goods. The defendant was, therefore, legally liable to pay for the goods at the contract price. He was bound to keep all the eggs or put them at plaintiff's disposal by a rescission of the contract. He could not retain some and return some. Nothing in the contract of the parties authorized any such act on his part. The rescission must be of the entire contract. The reason for the rule is that upon the rescission of a contract the party rescinding must restore, or offer to restore, everything of value that he has received under the contract, to the end that the other party may be put in *statu quo.*" (Lonker & Stevens *v.* Cohen, 78 Pa. Superior Ct. 73.)

The defence is based upon the inferior quality of the rejected coal, but it is not averred that the coal which was rejected differed in description from that retained, or that notice of rejection of any of the cars was served upon plaintiff prior to filing the affidavit of defence.

There is no defence presented as to the fourteen cars of coal shipped under contract of April 19th, which were accepted at the price of $1311.38, or as to $741.09 for the fourteen cars accepted, which plaintiff alleges were shipped under a contract of May 17th; or for the balance of $277.31 due on the car of coke. Plaintiff allowed credit for $338.73, payments made by defendant on its account, and for $580.03, received by plaintiff from the Chevrolet Motor Car Company. Plaintiff is entitled to have judgment entered for $1411.02, the amount as to which the affidavit of defence is insufficient.

There is no sufficient defence presented as to the claim of $2966.58 for thirty of the cars shipped under the contract of April 19th, which were rejected, but counsel has asked leave to file a supplemental affidavit, and judgment will not be entered upon this part of the claim in disposing of the present rules.

In the counter-claim there is no averment of a difference between the value of the coal at the time and place of delivery and its value if it had been of the quality warranted; it is not alleged that there was no available market for ascertaining the difference between the contract price and the market price; and there are no circumstances averred to indicate that damages incurred would be of a special character, either by reason of failure to deliver the coal or breach of warranty in the quality of the coal. It was at defendant's request that the remaining five cars of the forty-nine contracted for on April 19th were not shipped.

The answer in lieu of a demurrer to the set-off and counter-claim should be sustained. The answer filed by plaintiff to defendant's set-off and counter-claim is sustained.

Iron Trade Products Company v. C. E. Watson Coal Company.

And now, to wit, Aug. 1, 1924, it is ordered that judgment be entered in favor of plaintiff and against defendant in the sum of $1411.02, with interest, and without prejudice to plaintiff's right to proceed for the balance claimed.

Leave is granted defendant to file a supplemental affidavit of defence within fifteen days.